FILED

97 JUN 20 PM 5:05

U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| BARNETT TRANSPORTATION, INC., | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-97-N-0985-W |
| DSI TRANSPORTS, INC., | ] |
| Defendant(s). | ] |

ENTERED
JUN 20 1997

### Memorandum of Opinion

**I.   Introduction**

Barnett Transportation, Inc. ("Barnett") filed this action for Declaratory and Ancillary relief against DSI Transport ("DSI") on April 7, 1997, in the Circuit Court of Tuscaloosa County. The action was removed to this court on April 22, 1997. The matter is now before the court on the Motion to Transfer Venue to the Middle District of Florida, Tampa Division, filed by DSI on May 13, 1997. For the reasons stated herein the motion will be granted.

**II.  Background**

Defendant DSI is an interstate motor carrier.[1] Frequently it hires independent contractors to assist it in providing transportation services. On June 25, 1996, a company called Kight Transport, Inc. ("Kight"), which was owned by Larry Kight and Sarah Kight equally, entered into a written "Independent Contractor Contract" with DSI whereby Kight agreed to provide DSI with transportation services. Part of that agreement contained a

---

[1] The "facts" are discerned from the parties' submissions. They are generally not in dispute. The parties argue, not about the facts but about the impact of the facts on the issues surrounding the requested transfer.



"Non-disclosure and Non-solicitation" provision which purported to prevent Kight from "us[ing] or disclos[ing] any of [DSI's] confidential, proprietary and trade secret information, except in fulfilling its duties under [the] contract." *Independent Contractor Contract*, at 21. The agreement was effective immediately and was to remain in effect for at least five years.

In late 1996, Kight ceased operating and in February of 1997, the contract between DSI and Kight was terminated. After Kight ceased operations, Gary Stephens and Sarah Kight, a one-half owner of Kight, almost immediately formed a new corporation called KTI and Company, Inc. ("KTI"). Larry Kight, also a one-half owner of Kight, is an employee of this new company but has no ownership interest in the new company.

Barnett is also an interstate motor carrier and competitor of DSI. On or about March 3, 1997, Barnett employed KTI to provide transportation to Barnett's customers. Between March 27, 1995, and August 5, 1996, DSI had entered into separate contracts with mostly Florida companies whereby DSI agreed to provide transportation services to them. DSI alleges that by contracting with KTI, Barnett tortiously interfered with its contracts with these companies. DSI insists that this

> interference caused the termination of DSI's contracts with Customers in Florida. Barnett's tortious actions and the results therefrom severely limited DSI's ability to provide transportation services to Customers. As a result, the Customers' contracts with DSI were terminated, many prior to the end of their term.

*Brief in Support of Transfer*, at 3-4.

On March 24, 1997 DSI, through its attorney, wrote a letter which

> alleged that Barnett committed certain tortious conduct by hiring Larry Kight, including wrongfully inducing Larry Kight to terminate his business relationship with DSI, inducing Larry Kight to use confidential information, knowledge and good will acquired from DSI to convert DSI's customers and to interfere with DSI's contracts or business relationships with its customers.

*Complaint*, at 2. In that letter, DSI also demanded monetary compensation from Barnett. Barnett filed this action on April 7, 1997, for declaratory relief and ancillary relief pursuant to Ala. Code § 6-6-220 and Ala. R. Civ. P. 57. Specifically, Barnett requests a judgment that it did nothing wrong with respect to DSI's business interests.

## III.  Discussion

DSI has moved the court to transfer this case to the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1404(a) which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The intent of this provision is "to have federal civil suits tried in the federal system at a place called for in the particular case by considerations of convenience and justice. . . . [T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . " *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). The court has broad discretion to grant a motion to transfer in order to achieve these goals. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). However, federal courts traditionally have accorded a plaintiff's choice of forum considerable deference, and in a

3

motion to transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570 (11th Cir. 1989).

### A. Convenience of Parties and Witnesses

DSI first argues that "[w]ith few exceptions, all of the witnesses with personal knowledge of the claims made the basis of this action, reside in Florida." *Brief in Support of Transfer*, at 7. It lists as "obvious" witnesses "the relevant employees of DSI, the relevant principals of KTI (Kight Transport), the relevant KTI (Kight Transport) drivers who performed services for DSI, and . . . Larry Kight, Sarah Kight, the Drivers, and the representatives of the former Customers." *Brief in Support of Transfer*, at 11. Barnett challenges this list on several grounds.

First, Barnett contends that "with respect to its list of alleged "customers," DSI failed to identify a single material witness.[2] A motion to transfer based on the convenience of witnesses must be supported by more than general allegations. The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. 15 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3851. It is true that DSI does not identify specific individuals from the 11 customers it claims Barnett interfered with. It does, however, identify a number of witnesses by description or category and it does state generally the nature of the testimony they would be expected to give.

---

[2] It appears the "customers" that DSI is referring to are the 11 companies it contracted with between March 27, 1995, and August 5, 1996

Barnett next claims that "with respect to both the truck drivers of KTI and the unnamed representatives of its alleged 'customers,' DSI has failed to provide a general statement regarding the extent of these witnesses' testimony." *Brief in Opposition to Transfer*, at 8. However, on page 13 of DSI's brief, it alleges that the drivers and former customers "each have knowledge as to the business/contractual relationships between the Customers and DSI and Barnett's tortious interference with said contracts." *Brief in Support of Transfer*, at 13 (citing *Black Declaration*, at 3; *Hayward Declaration*, at 4). In addition, it identifies the drivers with relevant knowledge as: John Jones, Harold Doehring, Gregory Craig, Cleo Elliot, David Wolfe, Douglas Welles, Eddie Shannon, Terry Ryan, and Robert Salter. *See Brief in Support of Transfer*, at 7. Barnett has not disputed that all of these drivers reside in the State of Florida.

Barnett next argues that "neither of these categories of witnesses are material to DSI's allegations against Barnett." *Brief in Opposition to Transfer*, at 8. However, at this early stage the parties have barely begun to illuminate the issues in this lawsuit. The court is therefore not prepared to say which witnesses are material and which are not. What is clear is that DSI has alleged tortious interference with its contracts and that these witnesses have relevant information regarding that alleged interference. Based on these allegations at this stage of the proceedings, it appears these witnesses are material.

Next, Barnett argues that even if the testimony of KTI's truck drivers is material, "the owners of KTI, Gary Stephens and Sarah Kight, and Larry Kight have stated . . . that it would not be inconvenient, from the standpoint of KTI, for their truck drivers to come to the Northern District of Alabama, if necessary, in connection with this lawsuit." *Brief in*

5

*Opposition to Transfer*, at 9. While this may be true, § 1404(a) mentions the convenience of *witnesses*, not employers of witnesses, in determining whether to transfer a case. While this may be one element of convenience for KTI's truck drivers, Barnett offers no evidence that the drivers themselves would not be inconvenienced by attending court proceedings in Alabama.

Putting issues of convenience aside, as residents of Florida, DSI lacks the ability to compel these witnesses to attend court proceedings in the Northern District of Alabama. Availability of compulsory process is an important consideration when determining whether a forum is convenient. *Gulf Oil Corp. V. Gilbert*, 330 U.S. 501, 508 (1947). Non-party witnesses, Larry Kight, Sarah Kight and Gary Stephens, all reside in the State of Florida. Although Barnett points out that "Larry Kight, Sarah Kight and Gary Stephens have each stated in their affidavit that it would not be inconvenient for them to travel to the Northern District of Alabama, if necessary, in connection with the lawsuit," whether they would be willing to do so for DSI is another matter. *Brief in Opposition to Transfer*, at 9 (*citing Larry Kight Affidavit*, at 2; *Stephens Affidavit*, at 2; *Sarah Kight Affidavit*, at 2). As non-parties, DSI cannot compel these witnesses to travel to Alabama for trial. Clearly, these individuals would have relevant and material testimony. DSI still contends that the owners of KTI, when that company was known as Kight Transport, "wrongfully terminated" the contract between them. Given their prior dealings, it is not beyond the realm of possibility that these individuals may be less than eager to cooperate with DSI's attorneys, thus requiring DSI to expend considerable sums deposing these witnesses in Florida.

6

In sum, DSI's non-party witness list contains 23 potential witnesses who reside in Florida, and are not subject to compulsory process. In addition, DSI identifies as witnesses Mary Ann Hayward and Terry Rodery, employees of DSI who also reside in Florida. Barnett has identified only three witnesses--Clyde Barnett, David Rouse, and Steve Burroughs--who live in the Northern District of Alabama. Although, DSI has failed to identify specific individual representatives for their ten "customers" who operate out of Florida, the court is convinced that these individuals would be easily identified. However, even without these witnesses, the numbers of Florida resident witnesses, and the absence of compulsory process for the non-party witnesses, mitigates in favor of transfer.

**B.     Choice of Law**

In addition to convenience of witnesses and parties, there is another reason this case should be transferred to the Middle District of Florida. Since this action was filed in the Northern District of Alabama, this court must apply Alabama choice of law rules. *Klaxon*, 313 U.S. 487. In Alabama, the rule of *lex loci delicti* mandates that courts apply the substantive law of the place where the tort occurred, while applying the procedural law of the forum state. *Alabama Great So. R.R. v. Carroll*, 97 Ala. 126, 11 So. 803 (1892). DSI has alleged that "[t]he vast majority of the witnesses and the sources of proof are located in the Middle District of Florida, where the events which form the basis of this suit took place." *Brief in Support of Transfer*, at 14. Although where the events giving rise to the tort took place is disputed, it is probable that this court would be forced to apply Florida law in determining the issues regarding DSI's tortious interference claim. If the case is transferred to the Middle District of Florida, that court would also have to apply the choice of law rules

7

of Alabama, and ultimately the substantive law of Florida. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964); *McVicar v. Standard Insulations, Inc.*, 824 F.2d 920, 921 (11th Cir. 1987). This court is confident that a District Court in the Middle District of Florida would be the better venue for decisions based on Florida law.

**IV.   Conclusion**

In the interest of justice and pursuant to 28 U.S.C. § 1404(a), the motion to transfer this case to the United States District Court for the Middle District of Florida, Tampa Division, will be **GRANTED**.

Done, this __19th__ of June, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

8